THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GOLD LINE, INC. d/b/a GOLD LINE TRAILWAYS | : | |
| Plaintiff, | : | |
| v. | : | 3:20-CV-02015 |
| | : | (JUDGE MARIANI) |
| OURBUS, INC. | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### I. INTRODUCTION

Presently before the Court is the "Motion of Defendant Ourbus, Inc. to Dismiss the Plaintiff's Amended Complaint for Insufficient Service, Lack of Personal Jurisdiction and Improper Venue, or in the Alternative, a Motion to Transfer the Case to the Southern District of New York." (Doc. 17.) For the reasons stated below, the Court will deny Defendant's Motion in its entirety.

### II. FACTUAL & PROCEDURAL BACKGROUND

According to the Amended Complaint, this case arises out of a contract dispute between two companies in the bus industry. (Doc. 6.) Plaintiff, Gold Line, Inc. d/b/a Gold Line Trailways, asserts state law claims against Defendant, OurBus Inc., for breach of contract, unjust enrichment, and detrimental reliance. (*See id.*)

### *1. The Agreements*

The parties perform different roles in the bus industry. Plaintiff is a "commercial motor carrier company." (Doc. 6, Ex. A at 1.) Defendant is a "technology based service company primarily involved in the marketing, reserving and selling" of bus tickets with third parties through its website,[1] its smart phone application, or through third party websites. (*Id.*) Plaintiff and Defendant entered into a Transportation Services Agreement (the "Service Agreement") on June 26, 2017. (*See id.*)

Pursuant to the Service Agreement, "OurBus would arrange for a customer's reservation of a ticket on a Gold Line motor coach for a specific destination" and Gold Line would transport that customer to that destination on one of its buses. (Doc. 18 at 1.) In other words, "OurBus engaged Gold Line to act as the provider of bus services for its online ticket purchasing customer base for certain approved routes and services." (Doc. 6 at 6.) The Service Agreement provides that Plaintiff would transport Defendant's customers on only four routes between only three locations: Washington, D.C., New York, New York, and Kendall Park, New Jersey. (*Id.*) The Agreement states the corresponding fee that Defendant is obligated to pay Plaintiff "for each individual service run."[2] (Doc. 6, Ex. A at 4.)

---

[1]      According to the Amended Complaint, Defendant's website is www.OurBus.com. (Doc. 6 at 6.)

[2]      The listed fees are:

| | |
|---|---|
| Washington, D.C. to New York, N.Y., round-trip intercity service | $1,499.00 |
| New York, N.Y. to Washington, D.C., round-trip intercity service | $1,499.00 |
| Kendall Park, N.J. to New York, N.Y. to Washington, D.C., one-way | $1,182.00 |
| Washington, D.C. to New York, N.Y. to Kendall Park, N.J., one-way | $1,182.00. |

The Service Agreement provided that Plaintiff was to submit to Defendant invoices for all services on a twenty-one-day billing cycle, and Defendant was to pay each invoice within five business days of issuance. (*Id.*) If Defendant found an error in an invoice, it was to "promptly notify" Plaintiff and provide supporting documentation of such error. (*Id.*) If Defendant failed to pay an invoice, the Agreement imposed a late fee of $100.00. (*Id.* at 5.) The Agreement further provided for an annual interest rate of twelve percent on any balance outstanding for more than thirty days. (*Id.*)

The Service Agreement describes Defendant as a "New York corporation with a principal registered address" in New York and describes Plaintiff as a "Maryland corporation with a principal address" in Maryland. (*Id.* at 1.) It contains a "Notices" provision requiring that "[a]ll notices to be provided pursuant to this Agreement" be sent to Defendant's representative at 79 Madison Avenue in New York, New York and to Plaintiff's representative at 239 Old River Road in Wilkes Barre, Pennsylvania. (*Id.* at 15.) The Agreement also includes an "Applicable Law; Severability" provision which provides, in pertinent part: "Both Parties agree that any dispute arising under the terms and conditions of this Agreement shall be interpreted according to the laws of the Commonwealth of Pennsylvania." (*Id.*)

The term of the Service Agreement began on June 26, 2017, and ended on June 26, 2019. (*Id.* at 3.) The Agreement expressly states, "All parties acknowledge that this

---

(Doc. 6, Ex. A at 4.)

Agreement is not automatically renewed."[3] (*Id.*) In its Amended Complaint, Plaintiff alleges that because the parties "continued to perform under the terms and conditions of the Service Agreement beyond June 26, 2019," "the parties' relationship beyond June 26, 2019, was based on an implied contract incorporating the same terms of the Service Agreement" (as Plaintiff calls it, the "Implied Agreement"). (Doc. 6 at 7.) Plaintiff alleges it provided services for Defendant's customers on dates through and including March 22, 2020.[4] (*Id.* at 8.)

### 2. Alleged Breach of the Agreements

Plaintiff alleges that, although it continued to provide its services under the terms of the Agreements, and Defendant continued to accept them without objection, Defendant "continually failed and refused to pay" numerous invoices. (*Id.* at 10–11.) According to Plaintiff, Defendant never notified Plaintiff of any errors in the outstanding invoices. (*Id.* at 10.) Plaintiff has demanded payment for and has provided written notice of Defendant's default. (*Id.*) Plaintiff alleges that Defendant made representations to Plaintiff that it would pay for the services, and that Plaintiff relied on those representations to its detriment. (*See id.* at 13.) Finally, Plaintiff argues Defendant has been unjustly enriched by failing to pay for Plaintiff's services. (*See id.* at 11.)

---

[3]     The Agreement sets out the terms for renewal, (Doc. 6, Ex. A at 3), but the Record reflects no allegations that the parties took any steps to comply with the renewal terms.

[4]     Review of the allegedly unpaid invoices, attached to Plaintiff's Amended Complaint, indicates that the invoice dates range from October 23, 2019, to July 2, 2020. (Doc. 6, Ex. B.)

Plaintiff alleges a total outstanding balance of $552,929.74, plus interests and costs until paid. (*Id.*)

### 3. Procedural History

Plaintiff filed a Complaint on September 30, 2020, in the Court of Common Pleas of Luzerne County, Pennsylvania. (*See* Doc. 1, Ex. A at 6.) Defendant states that it was not served with process but "otherwise received a copy of the Complaint" on October 5, 2020. (Doc. 1 at 2.) On October 26, 2020, Plaintiff filed a praecipe to reinstate the Complaint. (Doc. 1, Ex. A at 97.) As described in an affidavit of non-service, Plaintiff first tried to serve Defendant on October 27, 2020, by attempting service in person at a coworking space in Manhattan where Defendant was a subtenant. (*See* Doc. 19, Ex. A.) Defendant's employees were working remotely due to the Covid-19 pandemic and were not on site to accept service. (*Id.*) Three days later, Defendant removed this case to federal court. (*See* Doc. 1.)

On December 8, 2020, Defendant filed a "Motion of Defendant Ourbus, Inc. to Dismiss the Plaintiff's Complaint for Lack of Personal Jurisdiction, Improper Venue, Failure to Serve, and Failure to State a Claim, or in the Alternative, a Motion to Transfer the Case to the Southern District of New York." (Doc. 4.) Plaintiff did not respond to Defendant's Motion, except to file an Amended Complaint on December 18, 2020. (Doc. 6.)

On January 21, 2021, counsel for both parties attended a Case Management Conference with the Court. (*See* Doc. 14.)

It appears Plaintiff did not attempt service again until March 2, 2021. On that date, Plaintiff sent service to Defendant by mail, according to an Affidavit of Service filed on April 5, 2021. (Doc. 16.) The Affidavit states that Plaintiff sent service "via United States Post Office Certified Mail, Restricted Delivery, Return Receipt, as evidenced by the correspondence and USPS Tracking attached hereto." (*Id.*) The USPS Tracking information attached to the Affidavit indicates that the letter was delivered to Defendant's Manhattan address on March 4, 2021, but does not reflect a signature of receipt. (*Id.* at 6.) That same day, Plaintiff attempted in-person service at Defendant's Manhattan address, but again, Defendant's workforce was remote. (Doc. 19, Ex. A at 3.)

On April 1, 2021, and again on April 3, 2021, Plaintiff attempted in-person service on Defendant's corporate officer, Narinder Singh,[5] but failed to locate Singh both times.[6] (*See id.* at 5.)

Defendant filed the present Motion to Dismiss on April 7, 2021.[7] (Doc. 17.)

Plaintiff attempted in-person service on another of Defendant's corporate officers, Vijay Gupta, at a Maryland address on April 9, 2021. (Doc. 19, Ex. C at 9.) Gupta could not

---

[5]   According to Plaintiff's Brief in Opposition, Narinder Singh is also known as Narinder Chadha. (Doc. 19 at 9.)

[6]   Neither Plaintiff's Brief in Opposition nor the attached invoice from At The Scene, Inc., a process server, specifies where Plaintiff attempted to serve Singh, only that he could not be found at two different addresses. (Doc. 19, Ex. C at 5.)

[7]   The Court issued a Verbal Order on May 13, 2021, finding Defendant's original Motion to Dismiss (Doc. 4) moot in light of Plaintiff's Amended Complaint (Doc. 6) and the present Motion to Dismiss (Doc. 17). (Doc. 21.)

be found at that address. (*Id.*) On April 12, 2021, Singh was served in person at a Maryland address. (*Id.* at 11.) On April 14, 2021, Gupta accepted and signed for service by certified mail at a New Jersey address. (*Id.* at 13.)

Plaintiff notes generally that it has "on numerous occasions requested that Counsel for OurBus simply accept service to which counsel has not provided the courtesy of a reply." (Doc. 19 at 8.) Plaintiff also states a belief that Defendant "is intentionally avoiding service." (*Id.* at 9.)

### III. LEGAL STANDARDS & ANALYSIS

Defendant filed the present Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2), (b)(3), and (b)(5). The Court will evaluate each argument in turn.

### 1. Motion to Dismiss for Insufficient Service of Process

### A. Federal Rule of Civil Procedure 12(b)(5)

Under Rule 12(b)(5) of the Federal Rules of Civil Procedure, a defendant may move to dismiss when a plaintiff fails to effectuate proper service. Fed. R. Civ. P. 12(b)(5). "In resolving a motion under Rule 12(b)(5), the party making service has the burden of demonstrating its validity when an objection to service is made." *Martin v. OSHA*, 2017 WL 1326212, at *2 (E.D. Pa. Apr. 11, 2017).

To effect service on a corporation, Federal Rule of Civil Procedure 4(h) provides, in pertinent part,

> Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served:
>
> > (1) in a judicial district of the United States:
> >
> > > (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or
> > >
> > > (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and--if the agent is one authorized by statute and the statute so requires--by also mailing a copy of each to the defendant; or

Fed. R. Civ. P. 4(h). Rule 4(e)(1) provides that an individual may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). Rule 4 also specifies the time frame in which a defendant must be served:

> If a defendant is not served within 90 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

## B. Pennsylvania Rules of Civil Procedure

Under Federal Rule of Civil Procedure 4(e)(1), service can also be effectuated pursuant to Pennsylvania law. Pennsylvania Rule of Civil Procedure 404 allows a plaintiff to serve an out-of-state defendant, in pertinent part,

within ninety days of the issuance of the writ or the filing of the complaint or the reissuance or the reinstatement thereof:

. . .

(2) by mail in the manner provided by Rule 403; [or]

(3) in the manner provided by the law of the jurisdiction in which the service is made for service in an action in any of its courts of general jurisdiction . . . .

Pa. R. Civ. P. 404. Pennsylvania Rule of Civil Procedure 403 provides that process served by mail "shall be mailed to the defendant by any form of mail requiring a receipt signed by the defendant or his authorized agent."[8]

Under Pennsylvania Rule of Civil Procedure 404(3), service in this case would also be sufficient if effected pursuant to the laws of the state in which the service is made. Service of Defendant by mail at its corporate address would therefore be sufficient if effected pursuant to New York law, as would in-person service of Singh if pursuant to Maryland law, and as would service by mail of Gupta if pursuant to New Jersey law.

## C. Analysis

First, the Court has little trouble determining that Plaintiff's service of process via mail on March 4, 2021, was insufficient. Federal Rule of Civil Procedure 4(h) does not provide for service by mail. *See* Fed. R. Civ. P. 4(h). And while Pennsylvania Rule of Civil Procedure 403

---

[8]     Under these conditions, service by mail on nonresident corporations is proper despite Pennsylvania Rule of Civil Procedure 424, which sets out those individuals who may be served in person on behalf of a corporation but does not *require* in-person service on nonresident corporations. *See Reichert v. TRW, Inc. Cutting Tools Div.*, 385 Pa. Super. 416, 428, 561 A.2d 745, 750 (1989), *rev'd on other grounds,* 531 Pa. 193, 611 A.2d 1191 (1992) (citing Pa. R. Civ. P. 424)

allows for service by mail under certain conditions, Plaintiff concedes that "it appears a signature is required for service upon a corporation under Rule 403" and that Plaintiff "has not received a returned copy of the signed 'green card.'" (Doc. 19 at 8.) The Court agrees that service was insufficient.[9]

Plaintiff argues it effectuated service on April 12, 2021, when it served Defendant's corporate officer Narinder Singh in person. (Doc. 19 at 9; Ex. A at 11.) According to Plaintiff's Return of Service, Singh was served at an address in Maryland by a process server. (Doc. 19, Ex. D at 11.) Service on a corporate officer is a sufficient method of service under the Federal rules. Fed. R. Civ. P. 4(h) (providing for service "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized

---

[9]     Plaintiff failed to effect proper service under Pennsylvania Rule of Civil Procedure 403. Under Rule 403, to effect service by mail, Plaintiff was required to send process by "any form of mail requiring a receipt signed by the defendant or his authorized agent." Pa. R. Civ. P. 403. Plaintiff did not require a signed receipt. (Doc. 19, Ex. A). Service was therefore insufficient under Rule 403.
        Plaintiff also failed to effect proper service under Pennsylvania Rule of Civil Procedure 404(3), as service by mail was not sufficient under New York law. As recently outlined by the Southern District of New York,

> New York Civil Practice Law and Rules § 311(a)(1), which governs service on a corporation, provides that personal service on a corporation shall be made by "delivering the summons . . . to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service." And while a mail alternative to personal service is authorized in New York pursuant to CPLR § 312-a, that provision requires that the summons be mailed "to the person or entity to be served, by first class mail, postage prepaid" "together with two copies of a statement of service by mail and acknowledgement of receipt in the form set forth in [CPLR § 312-d]." Service by mail is not complete until the acknowledgment of receipt is signed and returned. CPLR § 312-a.

*Accuprobe, Inc. v. Earth Search Scis., Inc.*, No. 1:18-CV-11871-MKV, 2022 WL 595742, at *4 (S.D.N.Y. Feb. 28, 2022). Plaintiff's March 4, 2021, service did not meet these requirements and was therefore also insufficient under Pennsylvania Rule 404(3).

by appointment or by law to receive service of process"). As Defendant suggests, however, April 12, 2021, falls far beyond the ninety-day window for service imposed by Rule 4(m). Fed. R. Civ. P. 4(m). Plaintiff filed the original Complaint on September 30, 2020, and Rule 4(m) required service of process no later than December 29, 2020. (Doc. 1, Ex. B at 6.) Plaintiff's April 12 service, as with any service attempt after December 29, 2020, is therefore untimely.[10]

Because Plaintiff did not properly serve Defendant within the temporal limits of Rule 4(m), the Court must now determine whether there exists good cause to extend the time for Plaintiff to effectuate service, *see* Fed. R. Civ. P. 4(m) ("But if the plaintiff shows good cause for the failure [to properly serve the defendant within 90 days], the court must extend the time for service for an appropriate period."), or if there is not good cause, whether the Court should grant the extension in its sound exercise of discretion.[11]

> [The Third Circuit] has developed a two-pronged inquiry to determine whether the grant of an extension of time in which to serve is proper under Rule 4(m). First, the district court must determine whether good cause exists for the failure to have effected service in a timely manner. If so, the extension must be granted. If good cause has not been shown, however, the court still may grant the extension in the sound exercise of its discretion. *See MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1098 (3d Cir. 1995); *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995).

---

[10]     The Court notes that Plaintiff's filing of the Amended Complaint on December 18, 2020, (Doc. 6), did not extend the time for service. *See Witasick v. Estes*, No. CIV.A. 11-3895-NLH, 2012 WL 3075988, at *3 (D.N.J. July 30, 2012) (quoting *Finch v. George*, 763 F. Supp. 967, 968 (N.D. Ill. 1991)).

[11]     The Court notes that, in either scenario, the extension would be granted retroactively, because the Court finds that Plaintiff's April 12, 2021, service would have been sufficient were it effectuated within ninety days of filing the Complaint under Rule 4(m)—Plaintiff need not serve Defendant a second time.

*McCurdy v. Am. Bd. of Plastic Surgery*, 157 F.3d 191, 196 (3d Cir. 1998); *see also Chiang v. U.S. Small Bus. Admin.*, 331 F. App'x 113, 115 (3d Cir. 2009).

Typically, courts consider three factors to determine whether good cause exists: "(1) the reasonableness of plaintiff's efforts to serve; (2) whether the defendant is prejudiced by the lack of timely service; and (3) whether the plaintiff moved for an enlargement of time to serve." *Bailey v. Harleysville Nat. Bank & Trust Co.*, 2005 WL 174843, at *1 (E.D. Pa. Jan. 26, 2005) (quoting *Steele v. HCI Direct*, No. CIV.A. 02-4347, 2004 WL 1699611, at *1 (E.D. Pa. July 29, 2004)). The Third Circuit has "equated 'good cause' with a concept of 'excusable neglect' of Federal Rule of Civil Procedure 6(b)(2), which requires a 'demonstration of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified in the rules.'" *MCI Telecomms. Corp.*, 71 F.3d at 1097 (quoting *Petrucelli*, 46 F.3d at 1312). If the court finds that good cause does not exist, "the court may in its discretion decide whether to dismiss the case without prejudice or extend time for service." *Petrucelli*, 46 F.3d at 1305; *see also MCI Telecomms. Corp.*, 71 F.3d at 1098.

Here, the Court finds that Plaintiff has not established good cause for its failure to timely serve Defendant. First, Plaintiff's efforts to serve were not reasonable because of the unexplained delay between Plaintiff's initial attempt, on October 27, 2020, and its second attempt on March 4, 2021. As outlined in its Brief in Opposition, Plaintiff made numerous attempts to serve Defendant. (Doc. 19 at 8–9.) Some attempts failed due to mistake, *i.e.*,

sending mail without a signature requested, and others due to forces outside of Plaintiff's control, *i.e.*, Defendant's remote workforce during a global pandemic. (Doc. 19, Ex. A at 2–3.) Other attempts failed because Plaintiff, despite "conducting searches" and "engag[ing] the services of third parties to search," simply could not track down the location of Defendant's corporate officers. (Doc. 19 at 9, Ex. A at 5, 9.) Had Plaintiff made such efforts within the ninety days prescribed by Rule 4(m), the Court might find such efforts reasonable. But Plaintiff has not put forth "some reasonable basis for noncompliance within the time specified in the rules" because it has offered no rationale for its inaction for more than four months following its initial attempt at service. *MCI Telecomms. Corp.*, 71 F.3d at 1097 (quoting *Petrucelli*, 46 F.3d at 1312).

Second, the Court finds that Defendant suffered no prejudice as it "otherwise received" the Complaint within days of Plaintiff's filing. (Doc. 1 at 2.) This factor weighs in favor of finding good cause. But without more, "[t]he 'absence of prejudice alone can never constitute good cause to excuse late service.'" *Chiang*, 331 F. App'x at 116 (quoting *MCI Telecomms. Corp.*, 71 F.3d at 1097).

Third, the Court notes that Plaintiff's first and only request for an extension of time to serve process was made retroactively in its Brief in Opposition to Defendant's Motion to Dismiss, (Doc. 19), after months of delay. *See id.* (holding appellant did not show good cause for an extension based in part on the fact that "Appellants did not even ask for an extension

of time until after the Government had filed its motion to dismiss"). For these reasons, Plaintiff

has not demonstrated good cause for its delay.

Nonetheless, the Court may grant an extension of time for Plaintiff to properly serve

Defendant through the exercise of its discretion. The Court

> may consider actual notice of the legal action; prejudice to the defendant; the
> statute of limitations on the underlying causes of action; the conduct of the
> defendant; and whether the plaintiff is represented by counsel, in addition to
> any other factor that may be relevant when deciding whether to grant an
> extension or dismiss the complaint.

*Chiang*, 331 F. App'x at 116.

In this case, the Court finds that a discretionary extension is warranted, because

several of the above factors weigh in Plaintiff's favor. As noted *supra*, the record shows that

Defendant has had actual notice of this action practically since its inception. (*See* Doc. 1 at

2.) Accordingly, Defendant was not prejudiced in the least. *See Boley v. Kaymark*, 123 F.3d

756, 759 (3d Cir. 1997) ("[A]ctual notice to a defendant that an action was filed militates

against a finding of prejudice.") These factors weigh heavily in favor of an extension.

The statute of limitations has not run, but the Court finds this factor neutral on balance.

"The running of the statute of limitations may be 'a factor supporting the discretionary granting

of an extension of time to make service under Rule 4(m),'" because dismissal of the complaint

under such circumstances would be, effectively, with prejudice. *Chiang*, 331 F. App'x at 116

(quoting *Boley*, 123 F.3d at 759). Here, Plaintiff's claim is nowhere near time-barred.[12] But the Court notes Plaintiff's argument that if the Court grants the present motion, it would "simply re-file the Amended Complaint which would adversely affect the interests of judicial economy." (Doc. 19 at 10 (citing *Valley Rod & Gun Club v. Chesapeake Appalachia, LLC*, No. 3:CV-13-0725, 2013 WL 4083897, at *3 (M.D. Pa. Aug. 13, 2013).) The Court agrees that "[t]he interests of judicial economy weigh in favor of the Court exercising its discretion to extend the time period to effect service," *Valley Rod & Gun Club*, 2013 WL 4083897, at *3, while also recognizing that "[d]istrict courts have consistently . . . treat[ed] the running of the statute of limitations as a factor favoring the plaintiff." That it has not run would favor Defendant. These competing interests render this factor neutral.

Defendant's conduct weighs in favor of granting an extension. Plaintiff asserts in its Brief in Opposition that "it appears that OurBus is intentionally avoiding service, and its counsel has refused to accept same." (Doc. 19 at 10.) Plaintiff provides no evidence to support its argument that Defendant is avoiding service. But the Court notes that the parties discussed service at their January 21, 2021, Case Management Conference and agreed that

---

[12]     In Pennsylvania, the statute of limitations for an action upon on a contract, including those implied in law, is four years. 42 Pa. C.S. § 5525. Without deciding exactly when the Plaintiff's actions accrued, it is clear they accrued around the time of the dates on the unpaid invoices—October 23, 2019, to July 2, 2020—and Plaintiff commenced this action in September 2020. (Doc. 6, Ex. B.; Doc. 1.) Further, Pennsylvania's savings statute gives plaintiffs one year following the dismissal of a timely-filed suit without prejudice to re-file an action. 42 Pa. C.S. § 5535(a)(1). Accordingly, Plaintiff would be free to re-file this action if this Court dismissed it.

Defendant's counsel would consult with co-counsel and tell Plaintiff's counsel whether Defendant would waive service, which evidently did not happen. This weighs only marginally in favor of Plaintiff.

Finally, Plaintiff is represented by counsel, which weighs against granting an extension.

On balance, the Court finds a discretionary extension is warranted. The Third Circuit prefers "that cases be disposed of on the merits whenever practicable." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984) (collecting cases). Granting a discretionary extension is practicable here. Plaintiff therefore effectuated service on April 12, 2021, notwithstanding its technical untimeliness under Rule 4(m). The Court will accordingly deny Defendant's Rule 12(b)(5) Motion to Dismiss Plaintiff's Amended Complaint for Insufficient Service.

### 2. Motion to Dismiss for Lack of Personal Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a complaint for lack of personal jurisdiction. "Once challenged, the plaintiff bears the burden of establishing personal jurisdiction." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007). "Plaintiff's jurisdictional allegations must be supported with appropriate affidavits or documents, because a Rule 12(b)(2) motion 'requires resolution of factual issues outside the pleadings.'" *Brooks v. Bacardi Rum Corp.*, 943 F. Supp. 559, 561 (E.D. Pa. 1996) (quoting *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 67 n.9 (3d Cir. 1984)). "However, when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff

need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004); *see also Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003) ("It is well established that in deciding a motion to dismiss for lack of jurisdiction, a court is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff."). "Of course, by accepting a plaintiff's facts as true when a motion to dismiss is originally made, a court is not precluded from revisiting the issue if it appears that the facts alleged to support jurisdiction are in dispute." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992).

"The Due Process Clause of the Fourteenth Amendment limits the power of a state court to render a valid personal judgment against a nonresident defendant." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). "Due process requires that the defendant be given adequate notice of the suit and be subject to the personal jurisdiction of the court." *Id.* (internal citations omitted). "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)). In Pennsylvania, the state's long-arm statute provides that personal jurisdiction extends "to the fullest extent allowed under the Constitution of the United States." 42 Pa. C.S.A. § 5322(b). Accordingly, this Court may exercise personal jurisdiction over a defendant if doing so does not violate the Due Process Clause. *Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 200 (3d Cir. 1998).

There are two types of personal jurisdiction: general jurisdiction and specific jurisdiction. *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773, 1779–80 (2017).  "A court with general jurisdiction may hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Id.* at 1780 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "Specific jurisdiction is very different. In order for a state court to exercise specific jurisdiction, 'the *suit*' must 'aris[e] out of or relat[e] to the defendant's contacts with the *forum*.'" *Id.* (quoting *Daimler AG*, 571 U.S. at 127) (alterations in original); *see also Skinner v. Flymo*, 505 A.2d 616, 619 (Pa. Super. Ct. 1986).

## A. General Jurisdiction

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 564 U.S. at 919 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)). "With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Daimler AG*, 571 U.S. at 137 (internal quotation marks and alterations omitted). In addition to these two paradigm bases, there may exist "exceptional case[s]" where "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 139 n.19; *see also Chavez v. Dole Food*

*Co.*, 836 F.3d 205, 223 (3d Cir. 2016) ("It is . . . incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business.") (quoting *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014)). "A corporation's 'continuous activity of some sorts within a state,' . . . 'is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.'" *Goodyear*, 564 U.S. at 927 (quoting *Int'l Shoe*, 326 U.S. at 318).

Focusing on Defendant's online presence, Plaintiff argues that Defendant is subject to general jurisdiction because its "affiliations with Pennsylvania are so continuous and systematic as to render it essentially at home" there. (Doc. 19 at 12.) Plaintiff argues that Defendant's website "specifically targets Pennsylvania customers" and "identifies numerous bus routes served by OurBus either embarking or terminating in Pennsylvania." (*Id.* (citing *OurBus Routes Guide*, OurBus, www.ourbus.com/routes).) Also relevant, Plaintiff asserts, are the website's "numerous news articles" announcing various developments regarding Defendant's services within the Commonwealth.[13]

---

[13]    Plaintiff cites the following language found on the website:

(1)  "OurBus Launches Express Bus Service From Philadelphia Suburbs to New York City." (Doc. 19 at 12 (*citing OurBus Launches Express Bus Service From Philadelphia Suburbs to New York City*, OurBus, www.ourbus.com/newsdetails/news-13).)

(2)  "OurBus ... is thrilled to expand its bus service to the northern and western suburbs of Philadelphia-Fort Washington, King of Prussia, Malvern and West Chester, Pennsylvania." *(Id.)*

(3)  "Lancaster & South Central Pennsylvania Residents-Help Crowdsource OurBus's Latest Route!" (*Id.* (citing *OurBus News*, OurBus, www.ourbus.com/newsdetails/news-44).)

(4)  "OurBus[] '. . . is excited to bring express bus service to the Big Apple for residents of Lancaster, Pennsylvania and surrounding locations . . . .'" (*Id.*)

(5)  "OurBus Launches Express Bus Service From Philadelphia to Washington, D.C." (*Id.* (citing *OurBus News*, OurBus www.ourbus.com/newsdetails/news-25).)

Defendant argues it is not subject to either general or specific jurisdiction in Pennsylvania courts. (Doc. 18 at 4–5.) Defendant points to the following alleged facts: (1) Defendant is a New York corporation, headquartered in New York; (2) Plaintiff is a Maryland corporation, headquartered in Maryland; (3) the Service Agreement provides for services to customers with final destinations in New York, New Jersey, and Washington, D.C., and therefore the subject matter of the Agreement is not directing activity at Pennsylvania residents; (4) none of the work was performed in Pennsylvania; (5) Defendant is not physically located in Pennsylvania; and (6) the marketing activity Plaintiff highlights does not "relate to [Plaintiff's] claims in any way." (*Id.* at 5.)

Because Defendant is not domiciled in Pennsylvania, it is only subject to general jurisdiction if these facts present an "exceptional case" wherein Defendant's operations render it "essentially at home" there. *Daimler AG*, 571 U.S. at 139 n.19; *Goodyear*, 564 U.S. at 919 (citing *Int'l Shoe*, 326 U.S. at 317). Plaintiff has set forth only online operations to satisfy this standard—namely, Defendant's website and certain marketing found within it.

While a "passive website that does little more than provide information" will not establish general jurisdiction, a website that is sufficiently interactive may suffice. *Snyder v. Dolphin Encounters Ltd.*, 235 F. Supp. 2d 433, 439–41 (E.D. Pa. 2002) (citing *Zippo Mfg. Co.*

---

(6) "OurBus ... is thrilled to expand to Philadelphia with regular trips to Washington, DC, with a stop in Columbia, Maryland, serving the needs of the local university area and surrounding locations, effective on Friday, April 13." (*Id.*)

*v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). The test for interactivity is akin to a "sliding scale" ranging from passive websites to those where a defendant "enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet." *Id.* at 439 (quoting *Zippo Mfg. Co.*, 952 F. Supp. at 1124).[14] If the website is sufficiently interactive, courts ask (1) whether the defendant specifically targets its website to citizens of the forum and (2) whether the plaintiff has demonstrated that the website is "'central' to the defendant's business in [the forum]." *See Rehman v. Etihad Airways*, No. 3:19-CV-00653, 2019 WL 12095414, at *9 (M.D. Pa. Nov. 14, 2019), *report and recommendation adopted*, No. CV 3:19-653, 2021 WL 780302 (M.D. Pa. Mar. 1, 2021) (quoting *Lutz v. Rakuten, Inc.*, 376 F. Supp. 3d 455, 469 (E.D. Pa. 2019)).

Plaintiff bears the burden of establishing personal jurisdiction and has not met its burden with respect to general jurisdiction. *See O'Connor,* 496 F.3d at 316. Plaintiff has demonstrated that Defendant's website "specifically targets" citizens of Pennsylvania by advertising and offering for sale routes that embark or terminate within Pennsylvania. *Lutz*, 376 F. Supp. 3d at 470; (*see* Doc. 19 at 12). But there is nothing in the record with respect to the remaining two factors—nothing to demonstrate that the website is sufficiently interactive, nor any argument or evidence that the website is "central" to Defendant's business in

---

[14]     "Although *Zippo* was analyzed under specific jurisdiction and did not discuss the imposition of a website for general jurisdiction purposes, the framework established in *Zippo* is used for general jurisdiction analyses." *Lutz v. Rakuten, Inc.*, 376 F. Supp. 3d 455, 468 (E.D. Pa. 2019) (citing *Molnlycke Health Care AB v. Dumex Medical Surgical Products Ltd.*, 64 F.Supp.2d 448, 451 (E.D. Pa. 1999)).

Pennsylvania. Moreover, "[i]t is . . . incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Chavez*, 836 F.3d at 223. Plaintiff has not overcome that difficulty here.

## B. Specific Jurisdiction

Turning to the issue of specific jurisdiction, the Third Circuit has established a three-part test to determine whether a district court can exercise specific personal jurisdiction over a defendant. *See O'Connor*, 486 F.3d at 317.

> First, there must be purposeful availment: minimum contacts with the forum state that show the defendant took a deliberate act reaching out to do business in that state. *Ford Motor Co. v. Montana Eighth Judicial District Court,* —— U.S. ——, 141 S. Ct. 1017, 1024–25, 209 L. Ed. 2d 225 (2021). Second, the contacts must give rise to—or relate to—plaintiff's claims. *Id.* at 1025. . . . For the contacts to satisfy the second prong, there must be "a strong 'relationship among the defendant, the forum, and the litigation.'" *Id.* at 1028 (quoting *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 414, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)).

Hepp v. Facebook, 14 F.4th 204, 207 (3d Cir. 2021). "And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with fair play and substantial justice.'" *O'Connor*, 486 F.3d at 317 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d 528 (1985)).  The third step concerns whether exercising jurisdiction over the defendant is reasonable under the circumstances. *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009).

A contractual relationship with a resident of the forum state, standing alone, does not justify the exercise of specific jurisdiction over a non-resident defendant. *See Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co.*, 75 F.3d 147, 151 (3d Cir. 1996) (citing *Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993)). The pivotal question is "whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach." *Spotts Bros., Inc. v. Seraphim USA Mfg., Inc.*, No. 3:18-CV-2235, 2019 WL 4267776, at *8 (M.D. Pa. Aug. 20, 2019), *report and recommendation adopted*, No. 3:18-CV-02235, 2019 WL 4265969 (M.D. Pa. Sept. 9, 2019) (quoting *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001)). Courts consider "not only the contract but also 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" *Vetrotex Certainteed Corp.*, 75 F.3d at 151 (quoting *Burger King Corp.*, 471 U.S. at 479). Courts in the Third Circuit have developed factors to be considered in determining "whether the course of dealing between two parties to a contract satisfies the strictures of the minimum contacts test." *It's Intoxicating, Inc. v. Maritim Hotelgesellschaft mbH*, No. 11-CV-2379, 2013 WL 3973975, at *8 (M.D. Pa. July 31, 2013) (citing *ADM Milling Co. v. Gold Crust Baking Co., Inc.,* 09–CV–544, 2009 WL 1885880, at *2 (M.D. Pa. 2009)). Courts should consider:

> 1) the location of the contract negotiations, 2) whether the nonresident solicited business from the forum state, 3) whether the non-resident invoked and received benefits under the laws of the forum state, 4) the contemplated future consequences of the contract, 5) the terms and provisions of the contract, 6) the parties' course of dealing, and 7) the type of goods sold.

*Id.* (quoting *ADM Milling Co.,* 2009 WL 1885880, at *2).

While a close call, Plaintiff has demonstrated that Defendant is subject to specific jurisdiction in Pennsylvania. The ultimate question is whether, by allegedly breaching a contract with a company operating out of its Pennsylvania office for services unrelated to Pennsylvania, Defendant "purposefully avail[ed] itself of the privilege of conducting activities within [Pennsylvania], thus invoking the benefits and protections of its laws." *Burger King Corp.*, 471 U.S. at 475 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1239–40, 2 L. Ed. 2d 1283 (1958)). This requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Id.* at 475 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774, 104 S. Ct. 1473, 1478, 79 L. Ed. 2d 790 (1984)).

The Court will consider each factor in turn to determine whether the parties' course of dealing demonstrates that it is "not unreasonable to require [Defendant] to submit to the burdens of litigation" in this forum. *Burger King Corp.*, 471 U.S. at 476.

### i. Contract Negotiations and Solicitation of Business

Though neither party alleges Defendant ever visited the office, Plaintiff has demonstrated that it conducted negotiations with Defendant out of its Pennsylvania office. Mail and telephone communications sent by a non-resident defendant into a forum can support a finding of minimum contacts. *See Hampton-Meridian Grp., Inc. v. Venturella*, No. 2:07CV1176, 2008 WL 2446697, at *5 (W.D. Pa. June 16, 2008) (citing *Grand Entertainment*

24

*Group, Ltd.*, 988 F.2d at 482). But "minimum communication between the defendant and the plaintiff in the forum state, without more, will not" satisfy the "purposeful availment" standard. *Id.* (quoting *IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d. Cir. 1998)).

According to Plaintiff, Defendant "conducted electronic, mail and telephone communications with Gold Line in Wilkes-Barre, Pennsylvania, with respect to the negotiation of, and services performed by Gold Line under, the Service Agreement and the Implied Agreement." (Doc. 19 at 13.) Plaintiff does not offer evidence but alleges these communications took place "prior to, during and subsequent to" the terms of the Agreements. (*Id.*) Defendant does not dispute these allegations. The Court takes these allegations as true, *see Toys "R" Us, Inc.*, 318 F.3d at 457, and finds this supports a finding of minimum contacts.

On the other hand, Plaintiff has not demonstrated that Defendant "solicited" business in Pennsylvania, so this factor does not support a finding of minimum contacts. Plaintiff asserts that Defendant "initiated" the commercial transaction, (Doc. 19 at 13), which Defendant has not disputed. Plaintiff does not allege, however, that Defendant "initiated" the commercial transaction with Plaintiff *in its Wilkes-Barre office*. Without more information, the Court cannot assume that "initiat[ing]" a transaction with Plaintiff, a corporation both incorporated and headquartered in Maryland, qualifies as "solicit[ing] the business from [Pennsylvania]." *It's Intoxicating, Inc.*, 2013 WL 3973975, at *8.

### ii. Whether the Non-Resident Invoked and Received Benefits Under the Laws of the Forum State

As Plaintiff suggests, the choice-of-law provision in the Service Agreement supports a finding of minimum contacts. While *Burger King* made clear that a choice-of-law provision "standing alone would be insufficient to confer jurisdiction," it also held that such a provision is relevant to the minimum contacts analysis. *Burger King Corp.*, 471 U.S. at 482; *see Hampton-Meridian Grp., Inc.*, 2008 WL 2446697, at *4. In that case, the Supreme Court held that, when considered with other factors, a choice-of-law provision "reinforced [the defendant's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there." *Burger King Corp.*, 471 U.S. at 482. As the Court explained, the defendant "'purposefully availed himself of the benefits and protections of [the forum's] laws' by entering into contracts expressly providing that those laws would govern franchise disputes." *Id.* (quoting *Burger King Corp. v. Macshara,* 724 F.2d 1505, 1513 (11th Cir. 1984), *rev'd sub nom. Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (Johnson, J., dissenting)).

This factor weighs most decidedly in Plaintiff's favor. The Service Agreement contains a provision stating: "Both Parties agree that any dispute arising under the terms and conditions of this Agreement shall be interpreted according to the laws of the Commonwealth of Pennsylvania." (Doc. 6, Ex. A at 15.) This provision demonstrates that, while it did not *consent* to personal jurisdiction, Defendant expressly "invoked and received the benefits under the laws of the forum state." *ADM Milling Co.,* 2009 WL 1885880, at *2.

### iii. Future Consequences and Type of Goods Sold

The two-year term of the Service Agreement supports a finding of minimum contacts. To evaluate the "contemplated future consequences of the contract," courts assess facts such as "the length of the . . . agreement" and "the expectation that the relationship would continue for years." *See, e.g., It's Intoxicating, Inc.*, 2013 WL 3973975, at \*10 (citing *Mellon Bank PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1224 (3d Cir. 1992)). If the "contemplated future consequences of the contract" indicate that the parties "knowingly established a long-term relationship with continuing obligations that would last for at least several years," then this factor weighs in favor of specific jurisdiction. *See id.*

This factor favors Plaintiff. Here, the parties entered a contract with a two-year term, (Doc. 6, Ex. A at 3), and allegedly continued performing for over nine months past the term's end. (*See* Doc. 19 at 4.) A two-year term falls somewhere in between "at least several years" of "continuing obligations," *It's Intoxicating, Inc.*, 2013 WL 3973975, at \*10 (citing *Mellon Bank*, 960 F.2d at 1224), and "random, isolated, or fortuitous" contacts that are decidedly not sufficient to establish purposeful availment. *Ford Motor Co.*, 141 S. Ct. at 1025 (quoting *Keeton*, 465 U.S. at 774). The two-year term here, under which the parties agreed to perform under certain conditions on a regular basis, is more like "several years" of "continuing obligations" and therefore favors Plaintiff.

In evaluating the import of the type of goods or services, courts have asked whether the goods or services at issue are more akin to a "one-time consumer purchase" or a

"specialized or long-term commercial commitment to purchase technology equipment." *ADM Milling Co.*, 2009 WL 1885880, at *4 (citing *Empire Abrasive Equip. Corp. v. H.H. Watson, Inc.*, 567 F.2d 554, 559 (3d Cir. 1977)). While frankly not akin to either, the Court notes that this was not a one-time purchase but an agreement of longer duration than the six-month contract in *ADM Milling Co.* that the court deemed "not of sufficient duration to weigh in favor of personal jurisdiction." *Id.* at *5. Accordingly, this factor weighs marginally in favor of Plaintiff.

### iv. Key Terms and Provisions

The terms of the contract favor both parties and are neutral on balance. As Defendant argues, "the subject matter of the Services Agreement—interstate travel between New York, New Jersey, and Washington D.C.—is not directing activity at Pennsylvania residents." (Doc. 18 at 5.) The Service Agreement provides for services to be performed outside the Commonwealth of Pennsylvania.[15] The bus routes begin and end outside the forum, and nothing in the Record suggests that the routes even pass through the forum. Plaintiff has not alleged that its buses were maintained, cleaned, or stored in Pennsylvania. In fact, Plaintiff makes no argument that the actual substance of the acts to be performed under the Agreement relates at all to Pennsylvania. This certainly favors Defendant.

---

[15]     The Service Agreement does provide for a "Right of First Refusal for Additional Routes," under which Plaintiff has the right of first refusal to provide an additional service route if Defendant desires to add one that arrives or departs within several listed states, including Pennsylvania. (Doc. 6, Ex. A at 9.) Plaintiff has not alleged that the parties ever contemplated adding such a route, so the Court finds this term insignificant.

But one important term cuts in Plaintiff's favor. The Service Agreement has a "Notices" provision that provides that "[a]ll notices to be provided pursuant to this Agreement" be sent to Plaintiff at an address in Wilkes-Barre, Pennsylvania. (Doc. 6, Ex. A at 14–15.) Defendant therefore "knew contact with [Pennsylvania] was a part of the relationship from the beginning." *Trinity Packaging Supply, LLC v. Countrywide Pallet, Inc.*, No. CV 18-16115 (NLH/JS), 2019 WL 2611101, at \*5 (D.N.J. June 26, 2019). To be sure, the very first paragraph of the Agreement identifies Plaintiff as a "Maryland corporation with a principal address" in Maryland. (Doc. 6, Ex. A at 1.) But the "Notices" provision plainly requires Defendant to mail all communications regarding the Agreement to the Pennsylvania address—not Maryland. (*Id.* at 14–15.) Defendant voluntarily entered a two-year contract that, by its terms, required at least some contacts with Pennsylvania. That certainly favors Plaintiff.

### v. The Parties' Course of Dealing

This factor supports personal jurisdiction for three reasons.  First, as Defendant seems to acknowledge, Plaintiff "has offices in Pennsylvania that received payments pursuant to the contract." (Doc. 18 at 6.) Receipt of payment in the forum state can support the establishment of minimum contacts. *See Vetrotex Certainteed Corp.*, 75 F.3d at 152–53 (citing *N. Penn Gas Co. v. Corning Nat. Gas Corp.,* 897 F.2d 687, 690–91 (3d Cir. 1990)) (holding contract did not establish personal jurisdiction and distinguishing the case from *North Penn Gas Co.* "where the defendant sent . . . payments to the plaintiff in the forum state"). And as Plaintiff

argues, most (though not all) of the unpaid invoices attached to the Amended Complaint include Plaintiff's Wilkes-Barre address. (Doc. 6, Ex. B.)

Second, as noted *supra*, Plaintiff alleges that Defendant conducted various communications with Plaintiff's Wilkes-Barre office throughout the duration of the Agreements, which can support jurisdiction. *See Hampton-Meridian Grp., Inc.*, 2008 WL 2446697, at *5 (citing *Grand Entertainment Group, Ltd.*, 988 F.2d at 482).

Third, Plaintiff asserts a claim for detrimental reliance and alleges that Defendant made "deliberate misrepresentations that it would pay for the transportation services provided by [Plaintiff] in Wilkes-Barre, Pennsylvania." (Doc. 19 at 15.) Though ambiguous, the Court takes this to mean that the misrepresentations were communicated to Plaintiff at its Wilkes-Barre location. The parties' course of dealing therefore supports a finding of minimum contacts.

The Court must ultimately decide "whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach." *Spotts Bros., Inc.*, 2019 WL 4267776, at *8 (quoting *Gen. Elec. Co.*, 270 F.3d at 150). Here, the allegations most instrumental to Defendant's alleged breach are (1) the non-payment of invoices and (2) "deliberate misrepresentations" regarding whether those invoices would be paid. Plaintiff has demonstrated Defendant's contact with Pennsylvania with respect to both allegations, supporting a finding of purposeful availment. *See Trinity Packaging Supply, LLC*, 2019 WL 2611101, at *6 (holding defendant was subject to personal jurisdiction in a breach of contract

claim when "[t]he most instrumental contacts related to the contract claims are the allegedly fraudulent reports, invoices, checks, emails, and phone calls" which were contacts "allegedly purposefully made from California to Plaintiff in [the forum state]").

On balance, Defendant has purposefully availed itself of the benefits and protections of the laws of Pennsylvania. Plaintiff has alleged just enough to satisfy several of the relevant factors, each of which, "standing alone," would be insufficient. But they do not stand alone, and together, the communications, invoices, "Notices" provision, and Pennsylvania choice-of-law provision are sufficient to establish minimum contacts.

Finding that Defendant's contractual dealings established minimum contacts, Plaintiff's claims also "arise out of" those contacts. "Plaintiff is suing for breach of contract and all the contacts upon which jurisdiction is based were in furtherance of that contractual relationship." *It's Intoxicating, Inc.*, 2013 WL 3973975, at *11 (citing *General Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001)).[16]

---

[16]     Defendant cites *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124 (3d Cir. 2020), a recent Third Circuit case detailing the personal jurisdiction standard for contract claims. (*See* Doc. 18 at 4–5.) *Danziger* states,

> Whether a plaintiff's claims "arise out of or relate to" the defendant's contacts with the forum state depends, in part, on the type of claim brought. *See O'Connor*, 496 F.3d at 317 (quoting *Helicopteros*, 466 U.S. at 414, 104 S. Ct. 1868). For contract claims, a plaintiff must satisfy a "restrictive standard" by showing proximate causation (also called "substantive relevance"). *O'Connor*, 496 F.3d at 318, 320. But-for causation is not enough: "[T]he defendant's contacts with the forum [must have been] instrumental in either the formation of the contract or its breach." *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001) (emphasis added). So a plaintiff cannot allege simply that but for x's occurrence, y (which may have been remote and not foreseeable) would not have happened.

Once minimum contacts are found, "jurisdiction is 'presumptively constitutional, and the defendant must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *GeoDecisions v. Data Transfer Solutions, LLC*, 10–CV–2180, 2010 WL 4718785, *5 (M.D. Pa. 2010)). Defendant has not argued that exercising jurisdiction would not "otherwise 'comport with fair play and substantial justice.'" *O'Connor*, 486 F.3d at 317 (quoting *Burger King Corp.*, 471 U.S. at 476). Plaintiff has therefore met its burden, and specific personal jurisdiction is proper in Pennsylvania.

### 3. Motion to Dismiss for Improper Venue, or in the Alternative, Motion to Transfer Venue

Having established personal jurisdiction, the Court must determine whether venue is proper, or whether Defendant's Rule 12(b)(3) Motion to Dismiss or, in the alternative, Motion to Transfer Venue to the Southern District of New York, should be granted.

---

*Danziger & De Llano, LLP*, 948 F.3d at 130. Shortly after *Danziger*, the Supreme Court decided *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, —— U.S. ——, 141 S. Ct. 1017, 1025, 209 L. Ed. 2d 225 (2021). In that case, the Court rejected a strict "causation-only" approach and emphasized that a suit must "arise out of *or relate to*" the defendant's contacts with the forum. *Id.* at 1026. *Ford* held that while "there must be "a strong 'relationship among the defendant, the forum, and the litigation,'" strict causation is not always necessary. *Id.* at 1028 (quoting *Helicopteros*, 466 U.S. at 414).

District courts in the Third Circuit disagree as to whether *Ford* abrogates *Danziger*'s causation requirement. *Compare Keystone Drill Servs., Inc. v. Davey Kent, Inc.*, No. 3:21-CV-30, 2022 WL 819280, at *11 (W.D. Pa. Feb. 22, 2022) ("[T]his Court holds that the 'Supreme Court did not expressly or impliedly overrule [the Third Circuit's causation-focused test in *Ford Motor*], but instead, simply highlighted that there are two methods of showing a sufficient connection between a plaintiff's claims and the defendant's contacts with the forum.'" (quoting *Beemac, Inc. v. Republic Steel*, No. 2:20-CV-1458, 2021 WL 2018681, at *8 (W.D. Pa. May 20, 2021)) *with Rickman v. BMW of N. Am. LLC*, 538 F. Supp. 3d 429, 441–42 (D.N.J. 2021) ("[T]he Third Circuit's causation requirement cannot be reconciled with *Ford*."). This background is provided only to state that the Court declines to address that question at this juncture, as this case does not turn on proximate causation but rather on "purposeful availment."

"In federal court, venue questions are governed either by 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995). "Section 1404(a) provides for the transfer of a case where both the original and the requested venue are proper." *Id.* "Section 1406, on the other hand, applies where the original venue is improper and provides for either transfer or dismissal of the case." *Id.*

## A. 28 U.S.C. § 1406(a): Improper Venue

Section 1406(a) permits a district court to transfer venue when a case is "filed . . . in the wrong division or district[.]" Generally, when federal jurisdiction is predicated upon diversity of citizenship, venue is proper in

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated.

28 U.S.C. § 1391 (b)(1)-(2).

However, when an action is removed from state court, venue is governed by § 1441(a), which "expressly provides that the proper venue of a removed action is 'the district court of the United States for the district and division embracing the place where such action is pending.'" *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 666, 73 S. Ct. 900, 902, 97 L. Ed. 1331 (1953) (quoting 28 U.S.C. § 1441(a)); *Reassure Am. Life Ins. Co. v. Midwest Res., Ltd.*, 721 F. Supp. 2d 346, 351 (E.D. Pa. 2010); 15 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Richard D. Freer, *Federal Practice and Procedure* § 3732 (4th

ed. 2013) ("Accordingly, the general venue statutes, Section 1391 through Section 1393, do not apply to cases that have been initiated in a state court and removed to a federal court . . . . It therefore is immaterial that the federal court to which the action is removed would not have been a proper venue if the action originally had been brought there.").

As a result, "§ 1406(a), by its own terms, only applies to cases that were 'filed' in this Court" and is inapplicable when a case has been removed from state court. *Elan Suisse Ltd., v. Christ*, 2006 WL 3838237, at *2 (E.D. Pa. 2006); *Polizzi*, 345 U.S. at 665 (holding that 28 U.S.C. § 1406(a) and § 1391 had no application to an action that had been removed from state court pursuant to 28 U.S.C. § 1441(a)). Since the instant action was removed from the Court of Common Pleas of Luzerne County, Pennsylvania, venue here is proper pursuant to § 1441(a). Thus, Defendant's Motion is denied to the extent it seeks outright dismissal for improper venue, and the Court cannot transfer this case pursuant to § 1406(a).

### B. 28 U.S.C § 1404(a): Inconvenient Venue

In the alternative, Defendant argues that this case should be transferred to the Southern District of New York. In a case that has been removed from state court, a district court may transfer venue pursuant to § 1404(a). *Reassure Am.*, 721 F. Supp. 2d at 351; *Elan Suisse*, 2006 WL 3838237, at *3. Section 1404 provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a); *see Neptune v. Carey*, 2021 WL 5632077,

at *2 (3d Cir. Dec. 1, 2021). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). Although § 1404(a) allows for flexibility, the burden of establishing the need for transfer still rests with the movant, *Jumara*, 55 F.3d at 879, and transfer "is not to be liberally granted." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). "[U]nless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail." *Id.* (internal quotation marks omitted).

In considering a motion to transfer, courts conduct a two-part analysis. *York Grp. Inc. v. Pontone*, No. CIV.A. 10-1078, 2014 WL 3735157, at *2 (W.D. Pa. 2014). "First, the court must decide whether the district to which the movant seeks to transfer the case has proper jurisdiction and venue, *i.e.*, could the case have been brought in the transferee district in the first instance." *Id.* (quoting *Centimark Corp. v. Jacobsen*, No. CIV.A. 11-1137, 2011 WL 6000719, at *6 (W.D. Pa. 2011)). "Second, the court applies a number of public and private factors to determine which forum is the most appropriate to consider the case." *Id.*

To determine whether venue would have been proper in the proposed transferee district if brought there in the first instance, the Court looks to 28 U.S.C. § 1391(b)(1)-(2). Section 1391(b)(1) provides that venue is proper in "a judicial district in which any defendant

resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1).[17]

Here, venue in the proposed transferee district would have been proper. OurBus is the only defendant, and it resides within the Southern District of New York. *See id.* § 1391(d). Accordingly, the Court agrees with Defendant that venue would have been proper in the Southern District of New York because it is the judicial district where the only defendant resides. *See id.* § 1391(b)(1).

Next, the Court considers whether transfer is appropriate under § 1404(a). "In ruling on § 1404(a) motions, courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and, indeed, commentators have called on the courts to 'consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.'" *Jumara*, 55 F.3d at 879 (quoting Wright, Miller & Cooper, *supra* § 3847). "While there is no definitive formula or list of the factors to consider, courts have considered many variants of the private and public interests protected by the language of § 1404(a)." *Id.* (internal citation omitted).

---

17     OurBus resides in New York within the Southern District. Under § 1391(c)(2), a corporate defendant resides in any district where it is subject to the court's personal jurisdiction. *Id.* § 1391(c)(2). Section 1391(d) specifies that in a state with multiple judicial districts, a corporate defendant is "deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." *Id.* § 1391(d). OurBus resides in New York because it is domiciled there and is subject, therefore, to the personal jurisdiction of New York courts. (Doc. 6 at 2.) Specifically, OurBus resides within the Southern District of New York because its principal place of business is located within that district. (*Id.*)

The private interests courts consider include:

[The] plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* (internal citations omitted).

The public interests include:

[The] enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases[.]

*Id.* at 879–80 (internal citations omitted).

"To carry its burden, the defendant 'must provide enough information to enable the District Court to balance the parties' interests.'" *Advanced Fluid Sys., Inc. v. Huber*, No. 1:13-CV-3087, 2014 WL 1808652, at *7 (M.D. Pa. May 7, 2014) (quoting *Lacey*, 862 F.2d at 44). Here, neither party provides the Court with enough information to conduct a proper § 1404(a) analysis. The parties devote their briefs to inapplicable arguments under § 1406(a) regarding where "a substantial part of the events or omissions giving rise to the claim occurred." (Doc. 18 at 6–7; Doc. 19 at 14–15); § 1391(b)(2). The parties wholly disregard the convenience factors enumerated above.

The only factors the parties have remotely addressed are (1) their respective preferences and (2) where the claims arose. The Third Circuit has stated, "a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice should not be lightly disturbed." *Shutte*, 431 F.2d at 25 (internal quotation marks omitted). Plaintiff seeks to maintain venue in the Middle District of Pennsylvania. (Doc. 19 at 14.)

With respect to where the claims arose, the Court considers the parties' arguments set forth under § 1406(a) regarding where "a substantial part of the events or omissions giving rise to the claim occurred." (Doc. 18 at 6–7; Doc. 19 at 14–15); § 1391(b)(2). Defendant argues that *Cottman Transmission Systems, Inc. v. Martino*, 35 F.3d 291 (3d Cir. 1994), is authoritative. In *Cottman*, the Third Circuit rejected the plaintiff's venue argument that the defendant's failure to pay occurred where the plaintiff felt the result of non-payment and not where the defendant failed to act. *Cottman*, 36 F.3d at 295. As Defendant suggests, courts have interpreted *Cottman* to hold that, for venue purposes, "omissions occur where the non-action happens, not where the act should have occurred."[18] *RAIT P'ship, L.P. v. Fieldstone Lester Shear & Denberg, LLP*, No. 09-28-GMS/MPT, 2009 WL 3297310, at *6 (D. Del. Oct.

---

[18]     This differs from Pennsylvania law, where "venue is proper . . . at the plaintiff's residence or place of business[] . . . in a breach of contract action alleging failure to make payment." *Scarlett v. Mason*, 89 A.3d 1290 (Pa. Super. 2014). Plaintiff cites this case in support of its position, (Doc. 19 at 14), but federal venue law applies. *See* 32 Am. Jur. 2d Federal Courts § 330 (In diversity actions, "[q]uestions of venue are essentially procedural, rather than substantive, in nature and therefore should be governed by federal law.") (footnotes omitted).

14, 2009), *report and recommendation adopted*, No. CIV.A. 09-28 (GMS), 2010 WL 786551

(D. Del. Mar. 3, 2010) (citing *Cottman*, 36 F.3d at 295); *accord Modular Steel Sys. Inc. v.

Grossman,* No. 4:21-CV-01206, 2022 WL 509109, at *1 (M.D. Pa. Feb. 18, 2022) (citing

*Cottman*, 36 F.3d at 295).

Defendant argues that "this is precisely the fact pattern here," (Doc. 18 at 7), and the

Court agrees. With respect to the breach of contract claim and unjust enrichment claim (which

arises out of substantially the same facts), "the claim[s] arose" in New York. *Jumara*, 55 F.3d

at 879 (citing 15 Fed. Prac. & Proc. Juris. § 3848 (4th ed.)).

With respect to the detrimental reliance claim, Plaintiff argues that venue is proper

here because of Defendant's "deliberate misrepresentations that it would pay for the

transportation services provided by [Plaintiff] in Wilkes-Barre, Pennsylvania." (Doc. 19 at 15.)

But "misrepresentations and omissions are deemed to occur in the district where they were

transmitted or withheld, not where they are received." *Rubin v. Mangan*, No. CV 19-5301,

2021 WL 617662, at *8 (E.D. Pa. Feb. 17, 2021) (citing *Kerik v. Tacopina*, No. 14-488 (FSH),

2014 WL 1340038, at *5 (D.N.J. Apr. 3, 2014)). Therefore, the detrimental reliance claim also

arose where Defendant was located, in New York.

Though the parties did not address it, the Court will also consider "the familiarity of the

trial judge with the applicable state law in diversity cases." The Service Agreement expressly

provides that it is to be interpreted under the laws of Pennsylvania. (*See* Doc. 6, Ex. A at 15.)

District courts in Pennsylvania are more familiar with Pennsylvania law than those courts

outside the Commonwealth, so this factor weighs against transfer. *Cf. Bensalem Lodging Assocs., LLC v. Holiday Hosp. Franchising*, LLC, 575 F. Supp. 3d 532, 541 (E.D. Pa. 2021) (where Georgia law was the "applicable law selected by the parties," this factor weighed in favor of transfer to Georgia).

Even though a plaintiff's venue preference is entitled to less weight when it differs from "the situs of the relevant events," the "plaintiff's choice of forum . . . is still the most important factor the Court considers.'" *Pontone*, 2014 WL 3735157, at *9 (quoting *Raffel v. Monarch Dental Corp.*, 1999 WL 1212184, at *2 (E.D. Pa. 1999)); *accord Argro v. Marriott Int'l, Inc.*, 2014 WL 2572804, at *2 n.3 (E.D. Pa. 2014). Therefore, even though for venue purposes, the claims arose in New York, this factor alone is insufficient to outweigh Plaintiff's venue preference for its home forum. Defendant has failed to meet its basic burden of demonstrating how litigating in this District would prove inconvenient or how transferring the case would be in the interest of justice.

The present Motion to Transfer Venue to the Southern District of New York is therefore denied.

## V. CONCLUSION

For the aforementioned reasons, the Court will deny the "Motion of Defendant Ourbus, Inc. to Dismiss the Plaintiff's Amended Complaint for Insufficient Service, Lack of Personal Jurisdiction and Improper Venue, or in the Alternative, a Motion to Transfer the Case to the Southern District of New York." (Doc. 17.)

Robert D. Mariani
United States District Judge